JUSTICE GRAY
delivered the Opinion of the Court.
Milton D. Brunsvold appeals from a Decision and Order of the First Judicial District Court, Lewis and Clark County, granting summary judgment in favor of all defendants in his suit for damages alleging wrongful incarceration in the Montana State Prison. We affirm in part and reverse in part.
On March 8, 1978, the Richland County District Court convicted *502 appellant Milton D. Brunsvold (Brunsvold) on a guilty plea to a felony charge of issuing bad checks. Brunsvold was granted a deferred sentence for a period of three years and placed on probation. The court attached certain conditions to the deferred sentence.
On January 2,1980, based on violations of conditions of probation, the District Court revoked Brunsvold’s deferred sentence and sentenced him to three years in prison with execution of the entire three-year sentence conditionally suspended. When Brunsvold again failed to abide by the conditions, the court revoked his suspended sentence on August 27, 1980. He was sentenced to three years in prison, with two years suspended; he began serving his sentence on September 12, 1980, and was discharged from the Montana State Prison on May 12, 1981.
On the day he was discharged, Brunsvold requested permission to travel to Idaho. His probation officer granted Brunsvold’s request under the condition that Brunsvold return to Montana on May 27, 1981. Thereafter, James Bennett, a probation officer of Montana’s Department of Institutions, noted that Brunsvold had not returned as ordered and also had failed to contact any parole or probation officer since he left the state. Based on these facts, Bennett determined that Brunsvold had again violated the conditions of his suspended sentence. Thereafter, on June 2, 1982, Bennett filed a Report of Violation recommending a hearing regarding Brunsvold’s violation of conditions and revocation of the two-year suspended sentence. In the report, Bennett stated:
“[I]n reference to the recent Miller/Blackerby rulings, which requires good time be given while on a suspended sentence, this officer has computed this subject’s discharge date as at approximately July 25, 1982.”
Bennett was referring to two unpublished cases, Miller v. State (1982), No. 81-565, and State v. Gray (1982), No. 82-164, in which we directed the Department of Institutions to credit good time allowances to sentences where the defendants were on probation while serving a suspended or deferred sentence.
The county attorney subsequently filed a petition to revoke Brunsvold’s suspended sentence and an information charging Brunsvold with bail jumping. Brunsvold’s affidavit states that he tried unsuccessfully to contact Bennett while in jail awaiting the revocation hearing; he wanted to tell Bennett that he believed he was being held improperly because his suspended sentence had been discharged. Under a plea bargain agreement and on advice of counsel, *503 appellant pled guilty to the bail jumping charge and did not resist the petition to revoke his suspended sentence. On March 2, 1983, the District Court revoked Brunsvold’s suspended sentence and resentenced him to two years in prison. Brunsvold was imprisoned on March 17, 1983.
After arriving at the prison, Brunsvold states he tried unsuccessfully to communicate the information concerning his alleged improper incarceration to Warden Henry Risley. In July of 1983, Brunsvold filed a Petition for a Writ of Habeas Corpus on the grounds that he had discharged all of his sentences, based on accrued but uncredited good time, prior to the March 2,1983, revocation hearing. On September 1, 1983, the Powell County District Court heard testimony on Brunsvold’s petition. The transcript of the Habeas Corpus hearing reveals that Bennett’s good time calculations were incorrect; indeed, based on accrued good time, Brunsvold’s entire suspended sentence had expired not only prior to the time the Richland County District Court revoked it, but prior to the time the petition to revoke was filed. Based on this testimony, the court ordered Brunsvold’s immediate release. On December 14, 1984, following his release, Brunsvold filed a civil suit alleging wrongful incarceration. He named as defendants the State of Montana, the Department of Institutions, Warden Henry Risley of the Montana State Prison, and probation officer James Bennett, who incorrectly calculated his good time credits. The District Court granted defendants’ motion for summary judgment on the basis of § 2-9-112, MCA, the judicial immunity statute, and this Court’s decision in Knutson v. State (1984), 211 Mont. 126, 683 P.2d 488.
Brunsvold appeals from the grant of summary judgment. The sole issue we address, since it was the dispositive issue in the District Court’s Decision and Order, is the following:
Did the District Court err in holding that each of the named defendants is entitled to immunity as a matter of law under § 2-9-112, MCA?
Brunsvold argues on appeal that the identity and acts of the named defendants herein are not “on all fours” with Knutson and that nothing in § 2-9-112, MCA, or its legislative history suggests an intention to apply judicial immunity to probation officers and prison officials. The defendants contend that Knutson extends judicial immunity to all who participate in any way in judicial acts. It is clear that the District Court felt compelled by Knutson to grant summary *504 judgment to all of the defendants herein on the basis of their participation in the judicial act of sentencing. In Knutson, we said clearly that sentencing is a judicial act. Knutson, 211 Mont. at 128, 683 P.2d at 490. We also said that the immunity statute protects “any governmental agency involved in the judicial act of sentencing.” Knutson, 211 Mont. at 129, 683 P.2d at 490. Perhaps understandably, the District Court concluded that Knutson was controlling as to all defendants herein.
The judicial immunity statute, § 2-9-112, MCA, must be construed and applied as to each defendant. The starting points, of course, must be the language of the statute and, if appropriate, the legislative intent behind it; but a brief discussion of the history of the principle of judicial immunity may help set the stage for the appropriate application of the statute to the facts in this case and such clarification of Knutson as may be necessary.
Judicial immunity is essentially a common law principle existing as early as 1354 (Book of Assizes, 27 Edw. III, pl. 18). It became a well-recognized rule after the decision in Floyd and Barker, 12 Co. Rep. 23, 77 Eng. Rep. 1305 (1608), and was recognized in this country as early as 1868. Randall v. Brigham (1868), 74 U.S. (7 Wall.) 523, 19 L.Ed. 285. Simply stated, the common law rule is that judges are not liable in a civil action for damages for judicial acts. The policy rationale for the rule was, and is, to assure that judges exercise their judicial functions with independence and without fear of consequence.
As a general rule, the 1972 Montana Constitution abrogated the doctrine of sovereign immunity. It also provided that immunity from suit could be established only by a two-thirds vote of each house of the legislature. Art. II, § 18, 1972 Mont. Const. The legislature so acted in 1977, passing several immunity statutes; among them was § 2-9-112, MCA, the judicial immunity statute at issue herein.
The legislative history of § 2-9-112, MCA, provides no concrete assistance in ascertaining the scope and parameters of judicial immunity intended by the legislature. In any event, the language used by the legislature is clear and unambiguous and its application to the specific facts before us is determinative of the issue on appeal.
It is clear that in order to fall within the judicial immunity shield, the State and the Department must be sued “for acts or omissions of the judiciary,” while Risley and Bennett each must be a “member, officer, or agent” of the judiciary discharging “an official duty associated with judicial actions of the court.” Section 2-9- 112, MCA. *505 Thus, the relationship of each of the defendants to the court in performing the functions or activities for which claims have been asserted against them must be examined.
To begin at the beginning: It is clear that the “determination and imposition of sentence are the exclusive duty of the court” (§ 46-17-301(4), MCA) and, thus, that the court itself is not liable for the judicial act of sentencing. Section 2-9-112(2), MCA. Brunsvold has not asserted such liability. The statute is also clear that “the state and other governmental entities are immune from suit for acts or omissions of the judiciary.” Section 2-9-112(1), MCA. Thus, to the extent that Brunsvold’s claims against the State and the Department arise solely from their actions in implementing the judicial act of sentencing by incarcerating Brunsvold, those entities are entitled to judicial immunity. As to these defendants and the referenced actions of each, Knutson is controlling.
As to defendants Risley and Bennett, it is clear that neither is a member of the judiciary; nor are they officers of the court, since each is an employee of the executive branch. The question, then, is whether either was an agent of the court in this factual setting.
It is clear that Risley was an agent of the court in accepting Brunsvold into the Montana State Prison. He acted in direct obedience to, and discharge of, the court’s sentencing order. Thus, he was an agent of the judiciary discharging “an official duty associated with judicial actions of the court.” Section 2-9-112(2), MCA. As such, and to that extent, we affirm the District Court’s grant of summary judgment in Risley’s favor.
Bennett’s relationship to the court on the facts of this case differs significantly from that of Risley, and it is here that we must draw a necessary line in construing the judicial immunity statute. Bennett performed an administrative or ministerial task in calculating Brunsvold’s good time credits. He did not do so at the direction of the court which ultimately ordered Brunsvold’s incarceration, but as a routine part of his daily job requirements. Under this factual situation, Bennett was not so intimately associated with a judicial act as to be an “agent” of the judiciary discharging “an official duty associated with judicial actions of the court” under § 2-9-112(2), MCA. As such, he was not entitled to judicial immunity and the District Court erroneously granted summary judgment in his favor. It follows logically that, to the extent any part of the appellant’s *506 claims against the State and the Department are based on their respective liability for the torts or other wrongs of their employees, summary judgment also was erroneously granted in their favor.
A strict construction of the statute simply does not allow an expansion of judicial immunity to cover the factual situation before this Court with regard to the particular act by defendant Bennett. It is true that such an expansion would create a bright, clear line; it would simplify the application of the judicial immunity statute by extending its coverage, at least by implication, to any act of any employee of any governmental unit or branch who has any contact of any kind with any judicial act or proceeding. Neither the statute’s language nor its legislative history reflect a legislative intent to do so.
It is of interest to note, perhaps, that our holding herein is consistent with results in many jurisdictions. Courts have been reluctant to expand judicial immunity to cover acts other than those intimately related to, or amounting to an integral part of, judicial proceedings. The statutory underpinnings for judicial immunity differ among the jurisdictions, and none mirror precisely the Montana statute; in addition, the federal cotuts continue to apply common law immunity principles. Yet, applying a variety of approaches, many courts have considered the nature of the act or activity being performed and its relationship to the judicial function. The federal courts address such cases, brought as § 1983 claims, by utilizing a functional/qualified immunity approach. See, e.g., Harlow v. Fitzgerald (1982), 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396; Galvan v. Garmon (5th Cir. 1983), 710 F.2d 214; Ray v. Pickett (8th Cir. 1984), 734 F.2d 370. This approach also would be applicable in § 1983 cases in state courts where state immunity defenses would not be available. In Florida, where a state statute waives judicial immunity, courts still apply the common law rule of judicial immunity, but discretionary governmental functions undergo a “planning” versus “operational” analysis whereby operational functions are not entitled to the immunity shield. Berry v. State (Fla. App. 1981), 400 So.2d 80, rev. denied, 411 So.2d 380 (Fla. 1981). Under the Kansas Tort Claims Act judicial function exemption, “judicial function” does not incorporate ministerial tasks. Cook v. City of Topeka (1982), 232 Kan. 334, 654 P.2d 953. And, as a final example, while an Arizona probation officer preparing a presentence report pursuant to or in aid of court direction is entitled to absolute judicial immunity, supervisory or administra *507 tive actions by a probation officer not pursuant to such court direction do not qualify for judicial immunity. Acevedo v. Pima County Adult Probation Dept. (Ariz. 1984), 690 P.2d 38.
As a final matter, the State has admitted error in the computation of appellant’s good time. The District Court concluded that liability for wrongful incarceration has been established as a matter of law as a result of that admission. It is our view that the ultimate liability of any of the named defendants remains to be established.
Among other possible issues on remand, therefore, is whether or not there were independent intervening causes of appellant’s incarceration. This question of fact will be decided by the trier of fact on remand, in the event this matter reaches the trial stage.
To summarize our holding in this case, judicial immunity under § 2-9-112, MCA, does not extend to the factual situation involving defendant Bennett in the case at bar. Therefore, we reverse the District Court’s grant of summary judgment in his favor and in favor of the State, the Department, and Risley insofar as claims against them are asserted other than for their actions in implementing the sentencing order, and remand for further proceedings consistent with this opinion.
Affirmed in part, reversed in part and remanded.
/s/ Honorable Peter L. Rapkoch.
District Judge, sitting in for JUSTICE McDONOUGH, concurs.